IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PHILLIP A. LAWSON, | : |
| | : |
| Plaintiff, | : Case No.: 23-cv-3985 |
| | : |
| v. | : Judge Algenon L. Marbley |
| | : |
| ARAMARK CORRECTIONAL SERVICES, et al., | : Magistrate Judge Elizabeth P. Deavers |
| | : |
| Defendants. | : |

**OPINION & ORDER**

This matter is before the Court on Plaintiff Phillip Lawson's Objections (ECF No. 27) to the Magistrate Judge's Report and Recommendation (ECF No. 26) recommending that this Court grant the pending motion to dismiss (ECF No. 15). For the reasons that follow, Defendants' Motion to Strike (ECF No. 28) is **DENIED**, the Motion to Dismiss (ECF No. 15) is **GRANTED**, and Plaintiff's Objections (ECF No. 27) are **OVERRULED.** Accordingly, the Magistrate Judge's Report and Recommendation (ECF No. 26) is **ADOPTED.**

**I.     BACKGROUND**

Plaintiff brought this case alleging claims arising from an employee of Defendant Aramark serving Plaintiff and other inmates food removed from a trash can on November 27, 2021. (ECF No. 5). Certain State Defendants and the State of Ohio as an interested party (collectively, the "ODRC Defendants") filed a motion to dismiss. (ECF No. 15). The Magistrate Judge has issued a Report and Recommendation for this Court's consideration. (ECF No. 26).

In the Complaint, Plaintiff alleges Defendants Aramark, Aramark coordinator Woods, John/Jane Doe Aramark supervisor (Defendant Tim Barttrum), and other correctional officers intentionally served, or failed to prevent the serving of, food out of a trash can to Plaintiff and other

1

inmates. (ECF No. 5). Plaintiff alleges that after dinner, he had an upset stomach, unusual acid reflux with cramping pains, severe diarrhea, and vomiting. (*Id.* ¶ 31). After his symptom persisted, Plaintiff alleges that correctional officers informed Plaintiff that two inmate food workers—inmates Edward Smith and Richard Burton—alerted a lieutenant and officer that "'Ms. Woods' Aramark Correctional Services LLC Food Manager, had retrieved beans from a contaminated trash can, and had them placed on trays to be served." (*Id.* ¶ 45) According to Plaintiff, Smith and Burton were placed in segregation to try to silence them. (*Id.* ¶ 46).

On December 2, 2021, Plaintiff indicated another inmate filed an informal complaint with Defendant Isaac Bullock concerning the November 27, 2021, dinner. (*Id.* ¶ 48). Bullock responded the "issue has been verified and addressed" and that "[c]orrective actions have been taken. You will need to complete a Health Service Request form to address your medical concerns" (*Id.*). Plaintiff alleged that instead of directing staff to send plaintiff to medical, Bullock informed Plaintiff that he would have to complete a health service request for his medical needs, which Plaintiff noted would take a couple of days. (*Id.*).

On some undisclosed date, Plaintiff began sending health service request forms. (*Id.* ¶ 43). Plaintiff explained that in one request, he stated he was experiencing severe stomach pains, he could not stop vomiting, and he had bowl movements that hurt. (*Id.* ¶ 36). Eventually, Plaintiff submitted a health service request form explaining his illnesses and pains, specifically indicating that he believed he had been poisoned by contaminated food served to him by Aramark and requested to be seen. (*Id.* ¶ 53).

Plaintiff alleges the medical staff refused to see him in attempt to cover up the fact that inmates were served contaminated food. (*Id.* ¶¶ 55, 56). At the same time, Plaintiff also alleges that

2

Plaintiff never ended up going to medical out of fear of retaliation, but on December 5, 2021, Plaintiff alleged inmates were escorted to see medical staff (*Id*. ¶¶ 42, 66).

Plaintiff alleged that family members of the impacted inmates called the institution, demanding that their family members be seen by medical or they would contact the state troopers. (*Id*. ¶ 65). When inmates were finally escorted to see the medical staff on December 5, 2021, inmates saw nurses, Defendants Skye Murry and Rachel Allen. (*Id*. ¶¶ 66-71). Plaintiff did not join, but alleged the inmates reported abnormal bowel movements, pain in their stomachs, and that they had been vomiting (*Id*. ¶ 67). He alleged they received no treatment. (*Id*.). Instead, Plaintiff claimed that the nurses simply stated, "well we seen you." (*Id*.). Plaintiff further alleged that rather than providing inmates with any treatment, the defendant nurses made jokes about the inmates being fed out of the trash can and stated, "this is what you signed up for coming to prison." (*Id*. ¶ 70). After the inmates returned from medical, Plaintiff claimed that they were then placed on "quarantine status" as a punishment for filing grievances and seeking medical treatment. (*Id*. ¶ 71).

Plaintiff explained being threatened and dissuaded from seeing the medical staff despite his symptoms. He alleged that the medical staff provided a list to prison staff of all inmates who requested to be seen by medical. (*Id*. ¶ 57). The morning before inmates were escorted to medical, Plaintiff alleged Defendant C. O. Koch informed other inmates that they could not come out of their cells until they were spoken to by a Major, Captain, Lieutenant, or a Sergeant. (*Id*. ¶ 58). Inmates whose names were not provided by the medical staff were permitted out of their cells, which Plaintiff alleged further dissuaded him from pursuing any action out of for fear of retaliation. (*Id*.). That same morning, Defendant Lt. Tim Tatman allegedly screamed at the inmates who reported symptoms, noting that he had seen their medical complaints and stating that "I'm locking the entire Unit down, because we fired the bitch what else do you want us to do? . . . "You[']r[e] sick so what . . . sleep it

3

the fuck off." (*Id*. ¶¶ 61-63). Plaintiff claimed this was to intimidate inmates from going to medical or further reporting their symptoms and that Defendant Tatman threatened that he would make their lives living hell if his "staff gets in trouble over that Aramark bitch."(*Id*.). Tatman presented inmates with a choice to go to medical but indicated they would be locked down for making the choice. (*Id*.). Plaintiff also alleges that between November 27, 2021 until January 10, 2022, he was so sick he could not leave his bed, but that Defendants Epperson and Farmer disregarded his requests to see medical. (*Id*. ¶ 72).

Plaintiff claims that Defendants Luneke, Back, Williams, Macintosh, Wells, and several others subsequently held a "town hall meeting," during which Luneke stated that inmates were not transferring institutions for at least eight weeks, their doors were to remain closed, and no questions were to be answered regarding "Aramark." (*Id*. ¶ 88). Plaintiff alleges that Defendants placed them on lock-down "to prevent plaintiff and the other inmates from exposing that they were fed contaminated food by Aramark" and in retaliation for filing informal complaints and for seeking information and medical attention in connection with the allegedly contaminated food. (*Id*. ¶¶ 92, 75).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b), district judges must "determine de novo any part of the magistrate's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.; 28 U.S.C. §636(b)(1). While the Court must consider all timely objections, the "filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to complete failure to object." *Slater v. Potter*, 28 Fed. App'x 512, 513 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.

1995)). The objections must also "be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller*, 50 F.3d at 380 (citing *Howard v. Sec'y of Health & Hum. Servs*, 932 F.2d 505, 509 (6th Cir. 1991)).

The pleadings of a pro se litigant are held to "less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Among such essentials are the obligations under Fed. R. Civ. P. 8(a)(2) to provide "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."

### III. LAW AND ANALYSIS

The Complaint alleges that all Defendants committed various wrongdoings, including violating Plaintiff's Eighth, Fourth, and Fourteenth Amendment rights. (ECF No. 5). The Report and Recommendation suggests dismissing all claims and granting the pending motion to dismiss. (ECF Nos. 15, 26). Plaintiff objects to the recommendation. (ECF No. 28). Defendants filed a Motion to Strike Plaintiff's Objections for being untimely. (ECF No. 28).

#### A. Motion to Strike

The Report and Recommendation was issued on January 13, 2025, and required any objection to be filed by January 27, 2025. (ECF No. 26). Plaintiff filed his objection on February 25, 2025. (ECF No. 27). On March 14, 2025, Defendants moved to strike Plaintiff's objection as untimely, arguing that Plaintiff, while *pro se*, is capable of requesting an extension and was informed that the consequences of failing to object timely included a waiver of the right to further judicial review. (ECF No. 28).

While Plaintiff's objection was untimely, the Sixth Circuit has indicated "a strong preference" for cases to be decided on the merits. *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193-94 (6th Cir. 1986); *see also Khamisi v. Neil*, No. 1:20-CV-286, 2021 WL 3634742, at *2 (S.D. Ohio Aug. 17, 2021) (S.D. Ohio Sept. 2, 2021). Additionally, provided Plaintiff files a motion for extension, under Federal Rule of Civil Procedure 6(b)(1)(B), "a court may, for good cause, extend the time on a motion made after the time has expired if the party failed to [file] due to excusable neglect." When determining excusable neglect and whether to extend the time for filing, courts consider: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the late-filing party acted in good faith. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

Plaintiff's *pro se* status, incarceration status, and the lack of any showing of bad faith weighs in Plaintiff's favor. Defendants do not raise a concern about any danger of prejudice. This Court, nevertheless, recognizes that due to this late filing Defendants did not respond to Plaintiff's objections. Defendants have requested time to respond to Plaintiffs objections provided the Motion to Strike is denied. (ECF No. 28 at 3). Defendants have also requested that this Court adopt the Magistrate Judge's Report and Recommendation in its entirety. (*Id.*). For the reasons below, this Court has adopted the Report and Recommendation in its entirety, thus, this Court finds the request to file a response as moot.[1]

---

[1] Specifically for this case, this Court does not find a response to the Objections would be necessary. The claims, Report and Recommendation, and Objections are substantially similar to those this Court reviewed in related cases: *King v. Aramark Correctional Services et al*, 2:23-cv-0156; *Burke v. Aramark Correctional Services et al*, 2:22-cv-4421; and *Woods v. Aramark Correctional Services et al*, 2:22-cv-4420. Defendants have filed substantially similar responses to the objections in each case.

In light of the strong preference to resolve cases on the merits and the lack of prejudice, Defendants' Motion to Strike (ECF No. 28) is **DENIED**.

### B. Motion to Dismiss

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The complaint should also be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Doe (R.A.) v. Best W. Int'l, Inc.*, No. 2:23-cv-3459, 2024 WL 3850958, at *1 (S.D. Ohio Aug. 16, 2024) (quoting *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### 1. Eighth Amendment Claim – Serving Contaminated Food

The Magistrate Judge recommended granting the ODRC Defendants' Motion with respect to the Eighth Amendment claim because Plaintiff failed to allege the ODRC Defendants' personal involvement. (ECF No. 26 at 10). The Magistrate Judge noted that two defendants, Sandridge and Sedlitz, are vaguely alleged to have some involvement but nonetheless, Plaintiff failed to allege facts suggesting any of the requirements under the Eight Amendment. Plaintiff's Objections focuses on Sandridge and Sedlitz and maintains that: (1) the isolated instance of serving contaminated food was "sufficiently serious" because it was intentional; and (2) Sandridge and Sedlitz were aware the

7

contaminated food was being served, so they were deliberately indifferent to Plaintiff's health and safety (ECF No. 27 at 4-8).

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter,* 501 U.S. 294, 296 (1991). It requires prisoners be provided with basic human necessities such as "food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). For a conditions of confinement claim, courts "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson,* 501 U.S. at 298, 303). "Extreme deprivations are required to make out a conditions of confinement claim. . . . 'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. at 9 (quoting *Wilson,* 501 U.S. at 298).

In order to state an Eighth Amendment claim based on prison conditions, the claim must have both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." *Id*. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 928. A prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Wilson*, 501 U.S. at

8

302 –03; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). A prison official must subjectively know of an excessive risk of harm to an inmate's health or safety and disregard that risk. *Farmer*, 511 U.S. at 837. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere negligence is not enough to satisfy this subjective element. *Id*.

Turning first to Plaintiff's assertion that this incident is "sufficiently serious" to meet the objective component, Plaintiff fails to indicate that this is alleged in his Complaint. As the Magistrate Judge explained, it is well-established in courts in this Circuit that isolated instances of food contamination are not sufficiently serious to constitute an Eighth Amendment violation. *See Correa v. Cullum*, No. 1:17-CV-300, 2018 WL 2020615, at *4 (S.D. Ohio May 1, 2018), *report and recommendation adopted*, No. 1:17CV300, 2018 WL 2735635 (S.D. Ohio June 7, 2018). Plaintiff does not deny this well-established case law but attempts to distinguish this case from those found not sufficiently serious by asserting this case alleges intentionally served contaminated food. (ECF No. 27 at 5-6).

In support of his assertion, Plaintiff references two cases of intentionally contaminated food being served to inmates and concludes that these cases represent that isolated incidents may be Eighth Amendment violations. (ECF No. 27 at 5). One case Plaintiff relies on is *Gray v. Boose*, No. 4:22-CV-10100, 2022 WL 662294 (E.D. Mich. Mar. 4, 2022). In *Gray* the plaintiff claimed that a deputy was poisoning his food trays. 2022 WL 662294, at *2. The court found the assertion that plaintiff was intentionally poisoned, resulting in headaches and muscle cramps, was sufficient to state an Eighth Amendment claim against the officer allegedly poisoning the plaintiff. *Id*. Here, however, Plaintiff does not allege this level of intention or action by Defendants Sandridge and Sedlitz. Plaintiff only alleges they were "alerted" that the food server "had retrieved beans from a

9

contaminated trash can, and had them placed on trays to be served." (ECF No. 5 ¶ 45). Further, the comparison of the facts in *Gray* to the facts here further supports the well-established holding that isolated incidents of contaminated food is insufficient for an Eighth Amendment claim. In *Gray*, the defendant officer was not only alleged to be poisoning Plaintiff's food trays, but the food trays of various prisoners over time. *Gray*, No. 4:22-CV-10100, 2022 WL 662294, at *1. Here, there is one isolated incident at issue.

Plaintiff also relies on *Mitchell v. Beshear*, No. 5:09CV-00003-R, 2011 WL 1458309 (W.D. Ky. Apr. 15, 2011). In *Mitchell*, the court during summary judgment found that "*intentionally* tampering with an inmate's food might allow a plaintiff to demonstrate knowing disregard despite a one-time occurrence." *Mitchell*, 2011 WL 1458309, at *3 (W.D. Ky. Apr. 15, 2011). One defendant officer in *Mitchell* was told that food being served to inmates contained feces, and the officer thought the comment was figurative on the food quality, so she did not meet the subjective requirement for knowingly disregarding a serious risk. *Id*. at *4. The court found the defendants did not act in a way that rises to the level of a constitutional violation. *Id*. The court did not assess the objective prong after finding the subjective prong was not met. While intentionally serving contaminated food in one instance may allow a demonstration of knowing disregard as the court noted in *Mitchell*, this finding goes to the subjective prong. Plaintiff still must meet the objective prong.

Plaintiff's reliance on *Mitchell* or *Gray* are thus unconvincing for this Court's analysis on the objective prong. Even if this Court accepts Plaintiff's assertion that the objective prong was met, Plaintiff only alleges that Defendants Sandridge and Sedlitz were aware of food taken from the trash can, not that they were involved in "intentionally tampering with" the food, that they were aware contaminated food was being served before or while the food was served, or that they had any opportunity to prevent it from happening. *See, e.g.*, *Mitchell*, 2011 WL 1458309, at *3.

10

The Magistrate Judge correctly concluded that alleging the knowledge that the food was in the trash can, without alleging anything further to show a risk was consciously disregarded, does no more than create speculation or suspicion of a cause of action. (ECF No. 26 at 13). This is insufficient as a matter of law to state a claim for relief. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

It follows that, as well-established in this Circuit, this one isolated instance of food contamination does not meet the objective component. *See Correa*, 2018 WL 2020615, at *4. As such, the mere awareness of an Aramark employee taking food from the trash to serve it is insufficient to suggest that ODRC Defendants Sandridge and Sedlitz acted with deliberate indifference to a substantial risk of serious harm. Plaintiff thus does not state an Eighth Amendment conditions of confinement claim against the ODRC Defendants Sandridge and Sedlitz,

Plaintiff also argues that ODRC Defendants Sandridge and Sedlitz are liable for a failure to prevent harm. Plaintiff maintains "that food was intentionally removed from a contaminated trash can by Aramark Defendant Woods, which was brought to ODRC Defendants' Sandridge and Sedlitz attention (the complaint properly alleges that inmates reported the incident), the two had full knowledge and permitted (approved) the food to be served, the two were state employees supervising the meal who each intentionally permitted the contaminated food to be served to Plaintiff." (ECF No. 27 at 9–10). Indeed, Plaintiff has alleged harm was done, but not "every injury suffered by one prisoner at the hands of another" amount to "constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. An Eighth Amendment violation occurs only when two requirements are met: the same subjective and objective components

11

as this Court has examined. *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021). Plaintiff's allegations are only that Defendants Sandridge and Sedlitz received a report that Aramark Defendant Woods had retrieved beans from a contaminated trash can and had them placed on trays to be served. (ECF No. 5 ¶ 45). This is insufficient to state an Eighth Amendment claim. Plaintiff did not allege that the ODRC Defendants contaminated, served, had prior ability to prevent the food from being served or consumed, or had reason to believe that the food would cause serious harm.

This Court does not minimize Plaintiff's claims of illness that resulted from this repulsive incident; nonetheless, under well-settled law, Plaintiff does not present sufficient allegations. Plaintiff has not provided this Court with allegations from which it could draw warranted inferences that Defendants were deliberately indifferent to a substantial risk of harm. Plaintiff has failed to state an Eighth Amendment claim with respect to the serving of the food, as such, the objection is **OVERRULED**.

2. *Eighth Amendment – Delayed/Denied Medical Treatment*

Plaintiff also objects to the recommended dismissal of the Eighth Amendment Claim related to Plaintiff's medical treatment. To begin, this Court notes that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). With respect to medical claims, the Eighth Amendment is violated when there is a "deliberate indifference to serious medical needs of prisoners." *Farmer*, 511 U.S. at 835. This requires "more than ordinary lack of due care for the prisoner's interests or safety." *Id*. (quoting *Whitley v. Albers,* 475 U.S. 312, 319). A plaintiff must satisfy an objective and subjective component. The objective component is whether there is "a sufficiently serious medical need." *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). "Routine discomforts of prison life do

12

not suffice." *Parker v. Bowen*, No. 4:18cv1744, 2018 WL 6267182, at *2 (N.D. Ohio Nov. 30, 2018) (citing *Hudson*, 503 U.S. at 8).To satisfy the subjective component, the plaintiff must show the act was with deliberate indifference. *Baynes*, 799 F.3d 600, 618 (6th Cir. 2015) (quoting *McCarthy v. Place*, 313 Fed.Appx. 810, 814 (6th Cir. 2008)). This requires a showing "that the official: (1) subjectively knew of a risk to the inmate's health [or safety], (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010)

The Magistrate Judge found Plaintiff's allegations as insufficient to state a claim because Plaintiff's medical conditions did not constitute a serious medical need, and the allegations do not show that defendants satisfied the subjective element. (ECF No. 26 at 16–18). "A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Yarbrough v. Henderson Cnty., Tennessee*, No. 23-5117, 2024 WL 229665, at *4 (6th Cir. Jan. 22, 2024) (quoting *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020) (internal quotation marks omitted)). Indeed, "[c]ourts are reluctant to find that gastrointestinal symptoms alone may constitute a sufficiently serious medical need." (ECF No. 26 at 17). This alone, however, does not mean "it appears beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claim which would entitle [plaintiff] to relief." *Mayer*, 988 F.2d at 638. Even so, Plaintiff must nonetheless satisfy the subjective element.

As to the subjective component, it is not alleged that the defendants had the "sufficiently culpable state of mind." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 541 (6th Cir. 2008). The subjective requirement "prevent[s] the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an

13

ailment." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446–47 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001). Here, Plaintiff has alleged an unclear timeline of symptoms and an even more unclear indication of the severity of the symptoms he expressed to Defendants. For example, Plaintiff alleges sending in requests to see medical without alleging when these requests were sent. (ECF No. 5 ¶¶ 36, 43). Plaintiff mentioned he wrote, "[m]y stomach has severe pains and I can't stop vomiting, and it hurts when I try to pass a bowel movement." (*Id*. ¶ 36). He does not, however, indicate going to the medical staff with these concerns. Plaintiff indicated other inmates were escorted to Medical on December 5, 2021, but Plaintiff was "intimidated into not going," so it appears no doctors or nurses had a chance to see him. (*Id*. ¶¶ 63, 66). Plaintiff's Objections raise concerns of doctors and nurses denying him medical care, but the Complaint alleges that Plaintiff chose not to seek any medical care due to intimidation. (*Id*. ¶¶ 63; ECF No. 27 at 12-14).

Additionally, each officer must be addressed individually for deliberate indifference claims. *Phillips*, 534 F.3d at 542. Plaintiff only provides conclusory statements for Defendants. One example is Defendant Kayla Stebelton who allegedly "acted with deliberate indifference to Plaintiff health and safety when she failed her duties to make Plaintiff aware of the food being contaminated which was the reason he was ill." (ECF No. 5 ¶ 40). Similarly, "Lt. Kayla Stebelton, also was deliberate indifferent to the Plaintiffs health and safety when she failed her duties and allowed the administration to falsely quarantine the Plaintiff when he sought medical attention for his illness." (*Id*. ¶ 41). While Plaintiff explains Lt. Kayla Stebelton was aware of food being served from the trash (*Id*. ¶ 40), Plaintiff fails to allege why this defendant would know that Plaintiff indeed ate the food from the trash, was suffering from any symptoms or conditions, that these symptoms were severe or a substantial risk to health, or that the medical team did not properly address Plaintiff's

14

symptoms or conditions. While Plaintiff need not allege each fact, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and Plaintiff has not met this standard. *Twombly*, 550 U.S. at 555.

Another relevant example is that Plaintiff alleges Deputy Warden Robert Welch was aware of the food served from the trash and "was deliberate indifferent to Plaintiffs health and safety when he didn't issue W.C.I. administration to escort the Plaintiff to medical immediately upon his knowing of this incident." (*Id*. ¶ 42). But Plaintiff fails to allege why the defendant would know of the severity Plaintiff's symptoms or conditions, or that he was not being seen and properly treated by medical. Plaintiff's allegations fail to this extent throughout the Complaint. As the Magistrate Judge correctly concluded "Plaintiff's conclusory allegations of deliberate indifference are unaccompanied by any facts suggesting that any ODRC Defendants possessed a 'sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish.'" (ECF No. 26 at 17 (quoting *Broyles v. Corr. Med. Servs., Inc*., 478 F. App'x 971, 975 (6th Cir. 2012)).

### 3. First Amendment Retaliation

Plaintiff's Objections also assert that he alleged the required factors for First Amendment Retaliation. (*Id*. at 21). To state a First Amendment Claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff argues he satisfies these three factors by showing: (1) he filed Informal Complaint Resolutions (ICRs); (2) he was yelled at, threatened with lockdown, and his Kiosk was

blocked; and (3) the acts were done because of his reports and him seeking medical attention. (ECF No. 27 at 18).

Plaintiff, however, did not make any of the allegations of the adverse actions that he has raised in his Objections. In the Objections, Plaintiff mentioned he "was locked down by Defendant Lt. Tim Tatman, prior to seeing medical where one day after seeing Medical Defendant's Dr. Corbett and Dr. Harlan placed them on quarantine on paper." (ECF No. 27 at 19). In the Complaint, Plaintiff alleged he was intimidated into not seeking medical care and Plaintiff never mentioned Dr. Corbett or Dr. Harlan. (ECF No. 5 ¶ 42). Plaintiff also inconsistently alleged whether he was ever on lock down or quarantine. For example, Plaintiff alleged Defendant Kayla Stebelton allowed Plaintiff to be falsely quarantined "when he sought medical attention for his illness." (*Id*. ¶ 41). On the other hand, Plaintiff also alleged in the Complaint that "Plaintiff and other inmates who also ate the contaminated food and were sick but refused to go to medical after the threats by Defendant Lt. Tim Tatman, were not placed on quarantine status nor punished in any way . . . ." (*Id*. ¶ 78).

Based on the inconsistencies between the Complaint allegations and the Objections, Plaintiff's objection is **OVERRULED**.

### 4. *Equal Protection*

The Magistrate Judge concluded the Equal Protection claim should also be dismissed because of Plaintiff's formulaic recitation of elements. (ECF No. 26 at 22). To state a claim, Plaintiff must show: (1) "he or 'she has been intentionally treated differently from others similarly situated'; and (2) 'there is no rational basis for the difference in treatment.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff asserts he alleged the required facts and references an affidavit filed. (ECF No. 27 at 22). The affidavit fails to support an Equal Protection Claim. The affidavit was written by Plaintiff

and essentially reiterates the allegations in the Complaint. This does not indicate that someone "similarly situated" was treated any differently from Plaintiff. As the Magistrate Judge noted, Plaintiff's allegations for any equal protection violation are wholly conclusory and the referenced affidavit does not address this.

Plaintiff's objection is **OVERRULED**.

### 5. Failure to Train

The Magistrate Judge found that Plaintiff's Failure to Train claim fails because: (1) it improperly conflates a § 1983 claim for supervisory liability with one for municipal liability; and (2) the Complaint fails to allege a supervisory defendant met the requirements for a supervisory liability claim. (ECF No. 26 at 20–22). "[T]o succeed on a supervisory liability claim, [a plaintiff] must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)). Plaintiff objects, stating that he has named defendants who were actively engaged in official duties and violated his constitutional rights. (ECF No. 27 at 21).

As described throughout this Opinion & Order, the allegations in the Complaint are conclusory, formulaic recitations of elements for constitutional violations and does not suggest causal connections to any constitutional violations. Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Plaintiff's objection is **OVERRULED**.

17

*6. Remaining Issues*

The Magistrate Judge recognized that there are various parts in the Complaint that make allegations but do not state a claim. (ECF No. 26 at 22–23). Defendant Kearns's inaction and failure to respond to demands for information, for example, are not § 1983 claims. (*Id.*).

Plaintiff attempts to clarify the role and authority of Kearns and other Defendants. Plaintiff explains that each defendant was informed of Plaintiff's sickness and Plaintiff directly requested certain defendants to allow him to be seen by the medical staff. (ECF No. 27 at 23). As this Court found when addressing Plaintiff's Eighth Amendment claims, these allegations as provided in the Complaint do not state a claim. As such, this objection is **OVERRULED**.

*7. Dismissal of Claims Against Remaining Defendants and State Law Claims*

Plaintiff simply states that he believes these findings in the Report and Recommendation should be denied as moot based on his other objections. Given this Court has overruled Plaintiff's other objections, these objections are **OVERRULED** as well.

### IV. CONCLUSION

Accordingly, Plaintiff's Objections (ECF No. 27) are **OVERRULED**. This Court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 26) as this Court's findings of facts and law and the Defendants' Motion to Dismiss (ECF No. 15) is **GRANTED**. The Motion to Strike (ECF. No. 28) is **DENIED**. Plaintiff's claims are **DISMISSED,** and his case is **CLOSED.**

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED: March 27, 2025**